# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EDDIE MCCOLLUM, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security Administration, <br><br> Defendant. | Case No. 07-CV-1016-JPS <br><br><br> **ORDER** |

      Plaintiff Eddie McCollum appeals a decision of the Appeals Council of the Social Security Administration, dated March 9, 2012, finding that Plaintiff is not under a disability within the meaning of the Social Security Act. (Tr. 9, 11). The Appeals Council's decision was a final decision of the Commissioner of Social Security. (Tr. 9).

      An exceptionally protracted procedural history, detailed below, brings the parties and the Court to this juncture. The Court finds that the Commissioner's final decision, as it currently stands, does not provide the Court a sufficient basis to determine whether substantial evidence supports the Commissioner's residual functional capacity ("RFC") finding, credibility determination or finding that Plaintiff's prior employment as a parking lot attendant is past relevant work, and so the Court is obliged to and will remand the case for further proceedings consistent with this opinion.

**1.    BACKGROUND**

      The Court will set forth the case background in two separate parts: (1) Plaintiff's background and relevant medical evidence; and (2) the procedural history in this case.

### 1.1 Plaintiff's Background and Relevant Medical Evidence

Plaintiff was born on May 17, 1954. (Tr. 74). Plaintiff dropped out of high school in the twelfth grade at 18 years of age, but subsequently obtained a GED at the age of 21. (Tr. 464).

Plaintiff's employment history includes work as: (i) a janitor and washroom attendant for a laundry business (December 1979 - August 1987); (ii) a parking lot attendant (December 1988 - February 1990); (iii) a stocker and packer at a hobbyist warehouse (November 1990 - September 1998); and (iv) a machine operator at a plastics manufacturer (September 1999 - September 2002). (Tr. 89).

Living with his mother and brother in a one-family house, Plaintiff does "all the yard work" including cutting grass, raking it up, shoveling snow, and throwing down salt. (Tr. 461). He also trims the bushes with a power saw. (Tr. 461). When Plaintiff does these tasks, he works for about an hour and then takes a break for about 15 or 20 minutes. (Tr. 478). Periodically, Plaintiff removes "garbage" (including "raggedy and broken" chairs) from the basement in the house. (Tr. 479-480).

With the $200.00 worth of food stamps per month Plaintiff receives, Plaintiff shops for groceries. (Tr. 462, 468). Plaintiff smokes "a half a pack a day" notwithstanding his asthma. (Tr. 469).

Even in snow, sleet and rain, Plaintiff generally goes for a walk each morning, using his cane as an assistive device, to "loosen up [his] legs and loosen up [his] knees." (Tr. 466, 477). In 2008, in the course of taking a morning walk around 6:00 am, Plaintiff was shot in the back and in the left shoulder by robbers wielding a shotgun. (Tr. 466-467). Following trauma surgery services, Plaintiff embarked on a course of physical therapy to

increase strength in his left arm and range of motion in his left shoulder. (*See* Tr. 395-410). The physical therapy discharge note, dated December 11, 2008, indicated that "strength tested as 4+/5 throughout major muscle groups in shoulder/scapular group" and that Plaintiff "is highly motivated and compliant" with his home exercise program. (Tr. 410). However, in December 2010, Dr. Reginald Adams' physical examination of Plaintiff indicated that Plaintiff's maximum ability to lift and carry with his left arm on an occasional basis (no more than 1/3 of an eight-hour day) and on a frequent basis (1/3 to 2/3 of an eight-hour day) is, in both cases, less than 10 lbs. (Tr. 449).

In the course of treatment by Dr. Christopher Withers in 2004 for various symptoms and pain, Plaintiff was diagnosed with flat feet with heavy calluses, osteoarthritis of bilateral knees and allergies. (Tr. 124, 126). Referred by the Social Security Administration for a consultative examination ostensibly because of limited treatment records, Plaintiff was seen by Dr. Kenneth Schaufelberger on May 4, 2005, to address primarily Plaintiff's complaints of bilateral knee pain for the prior six years. (*See* Tr. 139-141). Dr. Schaufelberger's physical examination of Plaintiff's lower extremities revealed no abnormalities, though on x-ray "AP and lateral views of the bilateral knees reveal[ed] moderate tricompartmental joint space narrowing without osteophyte or cyst formation," and Dr. Schaufelberger concluded that Plaintiff's knee pain was "not classic in its presentation for osteoarthritis" and recommended Plaintiff be evaluated for possible rheumatological arthritis. (Tr. 140-141). In addition, Dr. Schaufelberger recommended various work limitations for Plaintiff relating to squatting,

kneeling, repetitive use of stairs or a ladder, seated tasks, and duration of walking. (Tr. 141).

Then, in a January 2006 follow-up visit to Dr. Withers, Plaintiff was again found to have osteoarthritis of the bilateral knees. (Tr. 173). Dr. Withers' assessment at that time was that Plaintiff required a walking cane. (Tr. 174).

In response to Plaintiff's complaints in late 2007 and early 2008 of urinary issues including "urgency," "hesitancy," "dribbling in-between," "sensation of incomplete emptying," and "frequent nocturia," Dr. John Krueger made assessments of "microscopic hermaturia," "urinary frequency" and "possible urinary obstructive symptoms." (Tr. 325, 366). Dr. Krueger noted that, as of February 2008, Plaintiff had not changed his habit of drinking large amounts of water and at least four cups of coffee per day. (Tr. 366).

### 1.2    Procedural History

Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits on January 28, 2005, alleging that his disability began on May 10, 2003, and complaining of various impairments including osteoarthritis, asthma, allergies, fallen arches, tendonitis, arthritis, gum disease, dehydration, and frequent urination. (Tr. 69-73, 88). Plaintiff's application was denied initially, as well as on reconsideration and by Administrative Law Judge ("ALJ") Linda Halperin. (Tr. 40-44, 47-50, 60-66). Following those denials, Plaintiff appealed to this Court on November 15, 2007. (Tr. 213).

The Commissioner motioned the Court to remand the case because of a procedural error: ALJ Halperin had denied Plaintiff's application without designating individual exhibits in the file. (Tr. 184-87).

This Court granted the Commissioner's unopposed motion on January 31, 2008, and remanded the case to the Social Security Agency for further administrative action pursuant to the sixth sentence of 42 U.S.C. § 405(g). (Tr. 213). On May 21, 2010 – nearly two and one-half years after the Court remanded the case to the agency – the Appeals Council remanded Plaintiff's case to an ALJ with instructions to issue a new decision and, in so doing, vacated the final decision of the Commissioner (and, therefore, ALJ Halperin's decision). (Tr. 180-83).

Meanwhile, Plaintiff had filed another application for SSI in the spring of 2007 (Tr. 440-42), which was also denied both initially and on reconsideration (Tr. 443-46). ALJ Timothy Malloy consolidated the remanded case with Plaintiff's spring 2007 SSI application and held a *de novo* hearing on November 30, 2010. (Tr. 456-502). Plaintiff (represented by counsel) and a vocational expert each testified. (*See* Tr. 454-502).

Approximately two months later, on January 24, 2011, ALJ Malloy's decision issued: Plaintiff was found not disabled because he could perform his past relevant work as a plastics molding machine operator despite his impairments. (Tr. 25-25A).

Plaintiff subsequently filed exceptions and the Appeals Council assumed jurisdiction on October 21, 2011. (Tr. 28). The Appeals Council stated in its notice that it planned to consider the opinion evidence dated December 14, 2010, from Dr. Adams. (Tr. 28). Plaintiff then submitted a two-page letter to the Appeals Council on November 25, 2011. (Tr. 26-27).

On March 9, 2012, the Appeals Council issued a decision generally adopting the findings of ALJ Malloy. (Tr. 11-13). The Appeals Council's decision assessed Dr. Adams' opinions and did not afford those opinions significant weight. (Tr. 12). The Appeals Council found Plaintiff not disabled because Plaintiff retained residual functional capacity ("RFC") for a full range of light work and, in consequence, could perform his past work as a plastics molding machine operator. (Tr. 12-13).

Plaintiff appeals the Appeals Council's decision – a final decision of the Commissioner of Social Security – to this Court for review. (Tr. 9).

## 2. STANDARD OF REVIEW

The Commissioner's factual determinations are entitled to deference if they are supported by substantial evidence. 42 U.S.C. § 405(g); Craft v. Astrue, 539 F.3d 668, 673 (7th Cir.2008). "Substantial evidence" exists so long as there is "more than a scintilla" of evidence, such that "a reasonable mind might accept [it] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Young v. Barnhart* 362 F.3d 995, 1001 (7th Cir 2004).

The Court cannot "decide the facts anew, re-weigh the evidence or substitute its own judgment for that of the Commissioner to decide whether a claimant is or is not disabled." *Powers v. Apfel*, 207 F.3d 431, 434–35 (7th Cir. 2000) (citing *Perales*, 402 U.S., at 399–40, *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999)). Rather, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits, the responsibility for that decision falls on the Commissioner" *Binion on Behalf of Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

"[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ

to rationally articulate the grounds for [its] decision and confine our review to the reasons supplied by the ALJ." *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95, 63 S.Ct. 454, 87 L.Ed. 626 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir.1999); *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996)). "That is why the ALJ (not the Commissioner's lawyers) must 'build an accurate and logical bridge from the evidence to [the ALJ's] conclusion.'" *Steele*, 290 F.3d at 941 (quoting *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir.2001)). And "where the ALJ's decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded.'" *Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (quoting *Steele*, 290 F.3d at 940).

"Conclusions of law are not entitled to deference, however, so if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings." *Binion on Behalf of Binion*, 108 F.3d at 782.

**3.    ISSUES**

Plaintiff's statement of errors alleges that the Commissioner, in the context of steps four and five of the sequential evaluation process (described *infra*):

- **3.1**    failed to state what medical evidence supported the Commissioner's light RFC finding;
- **3.2**    failed to adequately justify weight given to treating source opinions;
- **3.3**    failed to comply with the requirements of SSR 96-8P because the Commissioner did not specify how long Plaintiff could sit,

stand, walk, push and pull – movements part of the full range of light work;

**3.4** failed to comply with the requirements of SSR 96-8P because the Commissioner did not consider Plaintiff's need to use a cane or Plaintiff's urinary frequency when the Commissioner assessed Plaintiff's RFC;

**3.5** failed to comply with the requirements of SSR 96-7P in reaching a credibility determination regarding Plaintiff; and

**3.6** improperly found that Plaintiff's prior employment as a parking lot attendant was past relevant work.

## 4. DISCUSSION

The Commissioner is required to follow a five-step sequential evaluation process in evaluating claims for disability. 20 C.F.R. § 404.1520. Here, the Commissioner found that Plaintiff: has not engaged in substantial gainful activity since May 10, 2003 (Step 1); has severe impairments of allergies (controlled with medicine), flat feet and calluses, early degenerative arthritis of the knee, and status/post gunshot wound to the left shoulder (Step 2); which do not meet or equal in severity an impairment in the Listing of Impairments (Step 3); possesses RFC to perform "a full range of light work" and is capable of performing past relevant work as a plastics molding machine operator as that job is normally performed in the national economy (Step 4). (Tr. 12).

### 4.1 RFC: Supporting Medical Evidence

Plaintiff's statements of error 3.1 through 3.4, *supra*, attack on various grounds the Commissioner's finding, in conjunction with Step 4, that Plaintiff possesses RFC to perform a full range of light work. "Light work involves

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

In attacking the Commissioner's light work RFC finding, Plaintiff first asserts that the ALJ failed to state on whose opinion he had relied. (Pl's Br. 18). An ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of Plaintiff's physicians, however the ALJ must consider the entire record. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007).

Here, ALJ Malloy commences his justification of a light work RFC finding with a catch-all reference to his "[h]aving reviewed the medical evidence and testimony" (presumably a reference to the preceding narrative discussion of Plaintiff's various treating and consulting doctor's records and opinions) and stresses that "he is giving [Plaintiff] considerable benefit of the doubt given a less than impressive medical records [sic] in the file…." (Tr. 24).

Plaintiff contends that limitations suggested by Drs. Schaufelberger, Withers and Adams in their respective opinions were improperly excluded by ALJ Malloy from his RFC finding. (Pl's Br. 18). ALJ Malloy acknowledged Dr. Schaufelberger's limitations on Plaintiff's capacity but excluded those limitations because "they seemed to be based more on claimant's statements of limitations as opposed to any medical findings

*per se*." (Tr. 22). In support of this impression, ALJ Malloy cites Dr. Schaufelberger's general observation that Plaintiff's bilateral knee pain is not classic in its presentation for osteoarthritis but omits mention of Dr. Schaufelberger's countervailing observation that "AP and lateral views of the bilateral knees reveal moderate tricompartmental joint space narrowing" and omits mention that Dr. Schaufelberger's opinion appears to contain a handwritten emendation implying that the observed joint space narrowing could be indicative of degenerative joints. (*See* Tr. 141). These two medical findings appear to have been ignored by ALJ Malloy. *See supra*. In any event, ALJ Malloy's stated rationale for disregarding Dr. Schaufelberger's limitations contains an inaccuracy. The bridge between evidence and conclusion must be not only logical, but accurate as well. Therefore, the Court cannot find on the present record that ALJ Malloy's exclusion of Dr. Schaufelberger's limitations from Plaintiff's RFC is supported by substantial evidence.

With regard to Dr. Adams' opinion, Plaintiff asserts that ALJ Malloy did not consider limitations to Plaintiff's capacity identified by Dr. Adams on December 14, 2010. (Pl's Br. 18; Tr. 449-453). ALJ Malloy's decision does not appear to account for Dr. Adams' opinion, however the Appeals Council addressed Dr. Adams' opinion in its decision. (Tr. 12).

In particular, the Appeals Council acknowledged that "Dr. Adams completed a medical source statement of the [Plaintiff's] functioning abilities from July 2008 and continuing" and *"his opinion is consistent with a residual functional capacity for less than a full range of sedentary work…"* but did not afford "significant weight" to Dr. Adams' opinion because "Dr. Adams attributed those restrictions to the claimant's 'complaints' (Question 14B)"

and "a claimant has to prove he is disabled by submitting evidence of medical findings." (Tr. 12) (emphasis added).

Given that the Appeals Council observed that Dr. Adams' opinion would be consistent with a RFC finding of *less* than a full range of *sedentary* work and the Appeals Council's sole stated reason for, in effect, disregarding Dr. Adams' opinion is Dr. Adams' response to Question 14B, the Court discusses below certain relevant portions of Dr. Adams' opinion and is left deeply concerned that the Appeals Council drew an over-broad (and therefore at least partially inaccurate) conclusion from Dr. Adams' response to Question 14B.

Dr. Adams' opinion is set forth on a form that contains the name and address of Plaintiff's counsel's law firm in the upper right-hand corner of the first page. (Tr. 449). The form is entitled "MEDICAL OPINION RE: ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)." (*Id*.). The form instructs the opining doctor at the outset to " …please give us your **opinion – based on your examination –** of how your patient's physical capabilities are affected *by the impairment(s)*." (*Id*.) (emphasis in original). Question 6 reads "[w]hat medical findings support the limitations described above?" (Tr. 451). In response to Question 6, Dr. Adams wrote "9/20/2010 x ray of left shoulder." (*Id*.). There is no indication that Question 6 is intended to relate to only Question 5. Rather, Question 6 appears to relate to any limitations set forth in response to the preceding Questions 1 through 5. (*See Id*.). In response to Questions 1 and 2, Dr. Adams indicated that Plaintiff's maximum ability to lift and carry with his left arm on an occasional basis (no more than 1/3 of an eight-hour day) and on a frequent basis (1/3 to 2/3 of an eight-hour day) is, in both cases, *less than 10 lbs.* (Tr. 449) (emphasis added). These

answers to Questions 1 and 2 are significant because they could be read to preclude a finding that Plaintiff retains RFC to complete a full range of light work because, as discussed *supra*, a full range of light work involves "frequent lifting or carrying of objects weighing *up to 10 pounds*." 20 C.F.R. § 404.1567(b) (emphasis added).

The Appeals Council's only stated rationale for disregarding Dr. Adams' *entire* opinion is that "the restrictions he listed were due to the claimant's subjective complaints only." (Tr. 12). In support of this assertion, the Commissioner cites only Dr. Adams' answer to Question 14B. (*Id.*).

Question 14 asks "[a]re the following PHYSICAL FUNCTIONS affected by the impairment?" and lists "Reaching (including overhead)," "Handling (gross manipulation)," "Fingering (fine manipulation)," "Feeling" and "Pushing/Pulling" with "Yes" and "No" responses next to each to be circled accordingly. (Tr. 452). In response, Dr. Adams indicated that reaching (including overhead), fingering (fine manipulation), and pushing/pulling – in each case with Plaintiff's left arm – would all be affected by Plaintiff's impairment. (*Id.*). Question 14A asks "[h]ow these physical functions are affected?" and Dr. Adams responded "weakness." (*Id.*). Question 14B asks "[w]hat medical findings support this?" and Dr. Adams responded "per patient's complaint." (*Id.*). A plain reading of Question 14B would suggest that it relates to only Question 14, not Questions 1 and 2.

Given that: (i) the Appeals Council found that Plaintiff retains RFC to do a full-range of light work (Tr. 12-13), despite observing that Dr. Adams' "opinion is consistent with a residual functional capacity for less than a full range of sedentary work" (Tr. 12); (ii) the Appeals Council's sole stated basis for disregarding Dr. Adams' opinion is Dr. Adams' response to Question

14B, (*id*.); and (iii) the Appeals Council's decision gives no indication that it is conscious of either the limited reach of Question 14B or the conflicting evidence found in Dr. Adams' response to Question 6 (which indicates that the medical evidentiary basis for Dr. Adams' weight-lifting limitations on Plaintiff's left arm identified in response to Questions 1 and 2 is an x-ray and *not* per patient's complaint) (Tr. 449-451), the Court is not convinced that the Appeals Council has drawn an accurate and logical bridge from Dr. Adams' opinion to the Commissioner's final determination that Plaintiff retains RFC for a full-range of light work.

The Court will address ALJ Malloy's treatment of Dr. Withers' opinion *infra* in Section 4.2.

### 4.2 RFC: Weight Given to Treating Source Opinions

Plaintiff complains that two of his treating sources' medical opinions – those of Drs. Adams and Withers – have been given short shrift by the Commissioner. The Commissioner's treatment of Dr. Adams' opinion is addressed *supra* in Section 4.1.

Dr. Withers, in a "Medical Examination & Capacity Form" dated January 17, 2006, diagnosed Plaintiff with osteoarthritis of the knees and indicated related limitations to Plaintiff's physical capacity including maximum abilities to sit and stand and walk (each with normal breaks) of "at least two hours" and gave a prognosis of "good." (Tr. 173). In addition, Dr. Withers noted that "plaintiff requires walking cane." (Tr. 174). ALJ Malloy's stated justification for disregarding (in effect) Dr. Withers' opinion (including the limitations it states) is that Dr. Withers' "actual treatment notes for that date and x-rays of the knees taken one day later were completely normal, claimant in fact telling Dr. Withers at the time of the examination that he was

'feeling good.'" (Tr. 24). ALJ Malloy then commented that the disconnect he identified "brings into serious question [Dr. Withers'] reliability and objectivity, that form likely completed more to accommodate claimants effort at securing disability payments/work exemption as opposed to representing any type of objective assessment." (*Id*.). In fact, the radiology report, dated January 18, 2006, does indicate that "[t]here is no evidence of fracture or other bony abnormality," "[t]he joint spaces are normal" and "[n]ormal bilateral knees." (Tr. 332). As to the "feeling good" comment noted by Dr. Withers, ALJ Malloy likely extrapolated too far since that comment comes at the outset of contemporaneous notes that contain subsequent notations of ailments which include, for example, "sinus congestion" and "bilateral knee-pain." (Tr. 328). Plaintiff points to 20 C.F.R. 416.927(c) to argue that ALJ Malloy discounted Dr. Withers' opinion without considering the length of the treatment, nature and extent of the relationship, the degree to which the opinion is supported by the evidence, the opinion's consistency with the record as a whole, whether the doctor is a specialist and "other factors." Even if the net effect following remand is the same, the Court agrees – especially in light of ALJ Malloy's cavalier and liberal extrapolation from the "feeling good" comment – that 20 C.F.R. 416.927(c) requires a fuller explanation (that takes care not to overstate things) of the weight afforded Dr. Withers' opinion.

### 4.3 RFC: Function-by-Function Assessment of Work-Related Abilities

"The RFC assessment must first identify the individual's functional limitations or restrictions and assess [a claimant's] work-related abilities on a function-by-function basis…" and "[o]nly after that may RFC be expressed

in terms of exertional levels of work." SSR 96-8P, 1. Here, the Commissioner found Plaintiff had severe impairments including, *inter alia*, flat feet and calluses and early degenerative arthritis of the knee. (Tr. 12, 25). Notwithstanding these findings, Plaintiff argues, the Commissioner failed to explicitly and adequately assess the extent to which those severe impairments affect Plaintiff's functional capacities to sit, stand and walk. (Pl's Reply Br. 2). Plaintiff argues that these three capacities are particularly relevant for a light work RFC finding because a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. *Id.*; 20 C.F.R. § 404.1567(b). The Court agrees that ALJ Malloy's decision requires elaboration in this regard.

### 4.4 RFC: Cane Use and Urinary Issues

Plaintiff also complains that limitations for cane use and urinary issues were not incorporated into the Commissioner's RFC finding. (Pl's Br. 16-18).

With regard to cane use, Plaintiff takes issue with ALJ Malloy's observation that "[w]hile claimant claims to have been prescribed a cane, there is absolutely no documentation of such" (Tr. 24), and cites to 7th Circuit precedent for the proposition that "[a] cane does not require a prescription," *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010). Regrettably, ALJ Malloy's decision is unclear as to whether ALJ Malloy pointed to the absence of a cane prescription: (i) for the narrow purpose of impeaching Plaintiff's statement that a cane prescription in fact was issued to Plaintiff (a purpose which the 7th Circuit precedent does not appear to prohibit); (ii) to rationalize omission of a cane use limitation from the RFC; or (iii) both (i) and (ii). *See Parker*, 597 F.3d at 922 ("Absurdly, the administrative law judge thought it suspicious

that the plaintiff uses a cane, when no physician had prescribed a cane. A cane does not require a prescription; it had been suggested to the plaintiff by an occupational therapist"). Moreover, ALJ Malloy hastily overstated the record in asserting that there is not "*any* indication of the need for an assistive device." (Tr. 24) (emphasis added). For example, Plaintiff testified that he uses a cane regularly and that Dr. Withers and Dr. Adams told him to keep using it. (Tr. 447). As stated *supra*, the bridge from evidence to conclusion must be both logical and *accurate*.

In response to Plaintiff's complaints in late 2007 and early 2008 of urinary issues including "urgency," "hesitancy," "dribbling in-between," "sensation of incomplete emptying," and "frequent nocturia," Dr. Krueger made assessments of "microscopic hermaturia," "urinary frequency," and "possible urinary obstructive symptoms." (Tr. 325, 366). In assessing a claimant's RFC, all medically determinable impairments are considered – even medically determinable impairments that are not severe. 20 C.F.R. § 404.1545. ALJ Malloy, however, explicitly discussed only Plaintiff's urinary frequency in his decision and so the Court is unable to determine whether ALJ Malloy considered Plaintiff's other urinary issues. (*See* Tr. 22).

For the reasons set forth above in Sections 4.1 through 4.4, the Court is unable to find that substantial evidence supports the Commissioner's RFC finding of a full range of light work and so will remand for further proceedings consistent with this opinion. *Giles ex rel. Giles*, 483 F.3d at 486.

### 4.5 Credibility Determination

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting

effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects." SSR 96-7P, 1. Oddly, the discussion section of ALJ Malloy's decision does not expressly mention credibility (*see* Tr. 20-24), and ALJ Malloy's "Findings of Fact and Conclusions of Law" do not include a credibility finding (s*ee* Tr. 25), however, the Appeals Council nonetheless "adopt[ed] the Administrative Law Judge's conclusions in that regard" (Tr. 12).

The credibility "conclusions" to which the Appeals Council refers appear to be observations in the discussion section of ALJ Malloy's opinion such as "[c]laimant takes no strong pain medications and his frequency of visits to physicians can best be termed intermittent, suggesting that whatever pain claimant may be experiencing, it is tolerable." (Tr. 24). This conclusion, in particular, is problematic because "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7P, 7. Here, there is testimony by Plaintiff that he did not pursue certain medical treatment because he could not afford it (*see, e.g.,* Tr. 206-207), and ALJ Malloy does not appear to consider that explanation (s*ee* Tr. 24).

Given that ALJ Malloy did not expressly bridge evidence in the transcript to express credibility conclusion(s), the Court lacks a meaningful basis to assess either the actual weight the Commissioner's final

determination afforded to Plaintiff's subjective statements about the practical effects of his impairments or the reason(s) for that weight and so must remand this issue. *See Steele*, 290 F.3d at 941.

### 4.6 Past Relevant Work

Plaintiff asserts that ALJ Malloy "found Plaintiff could return to his prior job as a plastic molding machine operator and parking lot attendant" (Pl's Br. 23), and contends that "the ALJ's finding that the parking lot attendant was past relevant work should be disallowed" because it is not supported by substantial evidence (Pl's Br. 25).

Although ALJ Malloy did mention in his discussion that the parking lot attendant job "is considered relevant for Social Security Administration purposes" and stated that the parking lot attendant job constituted substantial gainful activity (Tr. 20), neither ALJ Malloy's "Findings of Fact" nor the "Findings of the Appeals Council" mention the parking lot attendant job – rather each find only that Plaintiff is capable of performing "past relevant work as a plastics molding machine operator" (Tr. 25, 13).

The Commissioner counters by arguing that Plaintiff failed to challenge the finding that Plaintiff could perform his past work as a plastics molding machine operator as generally performed in the national economy and therefore waived his right to raise this issue. (Def.'s Resp. Br. 13).

Step Four of the Sequential Evaluation Process requires the Commissioner to compare the results of two predicate findings – a claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work – to determine if the claimant can still perform the claimant's past relevant work. 20 C.F.R. § 404.1520(f). In consequence, Plaintiff and the Commissioner appear to be talking past one another –

Case 2:07-cv-01016-JPS    Filed 10/05/12    Page 18 of 20    Document 20

Plaintiff is attacking one of the predicate findings (e.g., past relevant work) to the Step Four finding and Commissioner is defending the Step Four finding itself.

Plaintiff challenged the Commissioner's RFC predicate finding as being in error (addressed *supra*) and therefore Plaintiff implicitly challenged the finding that Plaintiff could perform his past work as a plastics molding machine operator as generally performed in the economy because that finding relies on the predicate RFC finding.

Plaintiff attacks ALJ Malloy's predicate finding that Plaintiff's prior employment as a parking lot attendant is past relevant work by disputing ALJ Malloy's determination that Plaintiff's parking lot attendant job constituted substantial gainful activity. (Pl.'s Br. 24-25). To justify that determination, ALJ Malloy stated only:

> Earnings during [the] three years that [Plaintiff] held the job [of parking lot attendant] were under $10,000, the most notable year been [sic] 1988 ($9,347.08). To be considered substantial gainful activity in 1988, earnings would need to exceed $300, which in claimant s [sic] case it clearly did.

(Tr. 20). Given that: (i) the record before the Court indicates that Plaintiff began working as a parking lot attendant only on December 4, 1988, and states no other work by Plaintiff in 1988 (*see* Tr. 89, 317); (ii) it is highly improbable (to say the least) that Plaintiff would have earned $9,347.08 in 1988 from working as a parking lot attendant for 28 days (i.e., December 4, 1988, to December 31, 1988); and (iii) ALJ Malloy failed to acknowledge points (i) or (ii) in his decision or provide a citation to the record for the $9,347.08 figure on which he based his calculation, the Court agrees that this portion of ALJ Malloy's decision lacks adequate discussion and therefore will

remand the issue of whether Plaintiff's prior employment as a parking lot attendant was past relevant work.

## 5. CONCLUSION

To be clear, the Court does not conclude that the record in this case requires that the Commissioner ultimately find Plaintiff to be disabled and, therefore, eligible for the benefits Plaintiff seeks. Rather, the Court finds that the Commissioner's final decision, as it currently stands, does not provide the Court a sufficient basis to determine whether substantial evidence supports the Commissioner's RFC finding, credibility determination or finding that Plaintiff's prior employment as a parking lot attendant is past relevant work. As a result, the court is obliged to remand the case for further consideration. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (requiring remand where Commissioner's decision lacks adequate discussion of issues).

Accordingly,

**IT IS ORDERED** that the Commissioner's decision be and the same is hereby **VACATED** and **REMANDED** to the Social Security Administration for further proceedings consistent with this opinion.

The Clerk is ordered to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 5th day of October, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge